# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON MELRATH, individually and on behalf of all others similarly situated, | : : : |
| Plaintiffs, | Civ. A. No. : : |
| v. | : : |
| EQUIFAX, INC., and EQUIFAX CREDIT INFORMATION SERVICES, INC., | : JURY TRIAL DEMANDED : : : |
| Defendants. | : : |

## CLASS ACTION COMPLAINT

Plaintiff Jason Melrath, by and through his undersigned counsel, brings this action individually and on behalf of a class of all persons and entities similarly situated, against Equifax, Inc. and Equifax Credit Information Services, Inc. (collectively, "Equifax" or "Defendant") for damages derived from violation of the Fair Credit Reporting Act and of various state laws. Plaintiff alleges facts regarding himself based on personal knowledge, and on information and belief as to all other factual allegations, as follows:

## NATURE OF THE ACTION

1. This is a consumer class action lawsuit brought by Plaintiff, individually and on behalf of all others similarly situated (*i.e.*, the Class Members), who have had their personal information held by Equifax—including names, social security numbers, birth dates, addresses, drivers' license numbers, credit card numbers and other personal identifying information (hereinafter collectively the "Personally Identifiable Information" or "PII")—unlawfully disclosed to unnamed third parties.

2.      Equifax disregarded Plaintiff's and the Class Members' privacy rights by intentionally, willfully, recklessly, or negligently failing to take the necessary precautions required to safeguard and protect their PII from unauthorized disclosure.

3.      Equifax improperly handled and stored Plaintiff's and the Class Members' PII. Equifax did not maintain Plaintiff's or the Class Members' PII with applicable, required, and appropriate cyber-security protocols, policies and procedures. Consequently, Plaintiff's and the Class Members' PII was compromised and stolen.

4.      Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, alleging that Equifax violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") and the Delaware Consumer Fraud Act, 6 Del. C. § 2513 ("CFA"); invaded Plaintiff's and the Class Members' privacy; and acted negligently.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over Equifax because, at all relevant times, Equifax conducted (and continues to conduct) business in the District of Delaware.

6.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b) and (c) because Equifax conducts business in this District.

## PARTIES

7.      Plaintiff Jason Melrath is a resident of the State of Delaware who resides at 413 Roseanna Ave., Wilmington, Delaware 19803.  Plaintiff's PII has been compromised as a result of the Breach (as hereinafter defined).  Further, since learning of the Breach, Plaintiff has spent

time and effort monitoring his credit and financial accounts, and he will have to continue to do so or to pay a private service to do so.

8. Defendant Equifax, Inc. is a Georgia corporation with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax conducted (and continues to conduct) business in the District of Delaware.

9. Defendant Equifax Credit Information Services, Inc. is a Georgia corporation with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax Credit Information Services, Inc. conducted (and continues to conduct) business in the District of Delaware.

## BACKGROUND FACTS

10. Equifax is one of three nationwide credit-reporting companies that tracks and rates the financial history of consumers in the U.S. These credit-reporting companies are supplied with data about loans, loan payments, credit cards, and any other financial obligation of a given consumer.

11. According to Equifax's report dated September 7, 2017, a breach was discovered on July 29, 2017 (the "Breach"). The perpetrators gained access by "[exploiting] a [. . .] website application vulnerability" on one of the company's U.S.-based servers. The hackers were then able to retrieve "certain files."

12. Included among those "files" was Plaintiff's and the Class Members' PII.

13. As a result of the Breach, Plaintiff and the Class Members are subject to identity theft.

14. Identity theft occurs when a person's PII is used or attempted to be used without his or her permission to commit fraud and other crimes.[1]

15. Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released a 2013 Identity Fraud Report (the "Javelin Report"), quantifying the impact of security breaches.[2] According to the Javelin Report, one in four individuals whose PII is subject to a reported security breach—such as the Breach at issue here—will suffer identity fraud or identity theft. *Id.*

16. "[T]he range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and [ ] any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[3]

17. Victims of identity theft are at serious risk of substantial losses. "Once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance. An identity thief can file a tax refund in your name and get your refund. In some extreme cases, a thief might even give your name to the police during an arrest."[4]

18. Identity thieves also use Social Security numbers to commit other types of fraud. Identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft can be the most damaging because it may take

---

[1] *See* Federal Trade Commission, *Consumer Information: Identity Theft*, available at http://www.consumer.ftc.gov/features/feature-0014-identity-theft (last visited September 11, 2017).

[2] *See* Javelin Strategy & Research, *2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters*, available at https://www.javelinstrategy.com/coverage-area/2013-identity-fraud-report-data-breaches-becoming-treasure-trove-fraudsters (last visited September 11, 2017).

[3] *See* Federal Trade Commission, *Protecting Consumer Privacy in an Era of Rapid Change*, at 8 (Mar. 2012), available at http://www.ftc.gov/os/2012/03/120326privacyreport.pdf (last visited September 11, 2017).

[4] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, available at http://www.consumer.ftc.gov/articles/0271-signs-identity-theft (last visited September 11, 2017).

119764509_1

some time for the victim to become aware of the theft, while in the meantime causing significant harm to the victim's credit rating and finances.

19. Identity thieves also use Social Security numbers to obtain false identification cards, obtain government benefits in the victim's name, commit crimes, and file fraudulent tax returns to obtain fraudulent tax refunds.  Identity thieves also obtain jobs, rent houses and apartments, and obtain medical services in the victim's name using stolen Social Security numbers.  Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.  Victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well as damage to their "good name."[5]

20. The unauthorized disclosure of a person's Social Security number can be particularly damaging because Social Security numbers cannot be easily replaced, and their misuse can continue for years.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently, as well as show that he has done all he can to fix the problems resulting from the misuse.[6]  Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

21. Obtaining a new Social Security number also is not a complete remedy for identity theft.  Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems.

---

[5] *See* Government Accounting Office, *Governments Have Acted to Protect Personally Identifiable Information, But Vulnerabilities Remain* (Jun. 17, 2009), available at http://www.gao.gov/new.items/d09759t.pdf (last visited September 11, 2017).

[6] *See* Social Security Administration, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064, October 2007, ICN 46327, available at http://www.ssa.gov/pubs/10064.html (last visited September 11, 2017).

119764509_1

Because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

22.     PII, such as that stolen during the Breach, is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for a number of years.[7]  Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security numbers, and other personal financial information on various Internet websites, thereby making the information publically available.  In one study, researchers found hundreds of websites displaying stolen personal financial information.[8]

23.     Plaintiff and the Class Members have suffered damage resulting from the unauthorized disclosure of their PII.  The injuries to Plaintiff and the Class Members were directly and proximately caused by Equifax's failure to properly safeguard and protect Plaintiff's and the Class Members' PII from unauthorized access, use and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Equifax's failure to establish, implement and maintain appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of Plaintiff's and the Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

24.     Plaintiff's and the Class Members' PII is private and sensitive in nature, and Equifax did not protect that PII adequately.  Equifax did not obtain Plaintiff's and the Class Members' consent to disclose their PII to any other person.

---

[7]     Companies also recognize Personally Identifiable Information as an extremely valuable commodity akin to a form of personal property.  *See* T. Soma, *et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

[8]     *See* StopTheHacker, *The Underground Credit Card Blackmarket*, available at http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/ (last visited September 11, 2017).

25. As a direct and proximate result of Equifax's wrongful actions and inactions and the resulting Breach, Plaintiff and the Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Breach on their lives, including, among other things, placing freezes and alerts with the credit reporting agencies, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity. Because Plaintiff's and the Class Members' Social Security numbers were stolen and compromised, they also now face a significantly heightened risk of identity theft and identity fraud.

26. Equifax's wrongful actions and inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and the Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

   a. Theft of their PII (*i.e.*, identity theft);

   b. Unauthorized use of their PII (*i.e.*, identity fraud);

   c. The untimely and inadequate notification of the Breach;

   d. Improper disclosure of their PII;

   e. Ascertainable losses in the form of out-of-pocket expenses associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

   f. Damages arising from their inability to use their PII;

   g. Loss of use and access to their financial accounts, and the resulting consequences thereof, including missed payments and adverse effects on their credit scores;

    h. Ascertainable losses in the form of out-of-pocket expenses associated with mitigating the damage derived from the Breach, including time spent, loss of productivity, and loss of enjoyment of one's life;

    i. Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

    j. Damages arising from the utilization of the PII by criminals on the black market;

    k. Deprivation of rights they possess under the FCRA; and

    l. Invasion of their privacy.

27. Further, Plaintiff and the Class Members have a continuing interest in ensuring that their private information, which remains in the possession of Equifax, is protected and safeguarded.

28. At all relevant times, Equifax was aware, or reasonably should have been aware, that the PII collected, maintained and stored by Equifax in its electronic systems is highly sensitive, susceptible to attack and theft, and could be used for wrongful purposes by third parties.

29. Plaintiff and the Class Members bring this action to remedy the aforementioned harms resulting from the Breach.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action as a national class action on behalf of himself and the following Class of similarly situated individuals:

> All persons residing in the United States whose PII was acquired by unauthorized persons in the Breach announced by Equifax in September 2017.

Excluded from the Class are (i) Equifax owners, officers, directors, employees, agents and representatives and its parent entities, subsidiaries, affiliates, successors and assigns; and (ii) the Court, Court personnel, and members of their immediate families.

31. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action as a national class action on behalf of himself and the following Subclass of similarly situated individuals:

> All persons residing in the State of Delaware whose PII was acquired by unauthorized persons in the Breach announced by Equifax in September 2017.

Excluded from the Subclass are (i) Equifax owners, officers, directors, employees, agents and representatives and its parent entities, subsidiaries, affiliates, successors and assigns; and (ii) the Court, Court personnel, and members of their immediate families.

32. The putative Class comprises over 140 million consumers, making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

33. The rights of each Class Member were violated in a virtually identical manner as a result of Equifax's willful, reckless, or negligent actions and inactions.

34. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

    a. Whether Equifax violated the FCRA by failing to properly secure Plaintiff's and the Class Members' PII;

    b. Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c.  Whether Equifax willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class Members' PII;

d.  Whether Equifax was negligent in storing and failing to protect Plaintiff's and the Class Members' PII;

e.  Whether Equifax had a duty to exercise reasonable care in protecting and securing Plaintiff's and the Class Members' PII;

f.  Whether Equifax breached its duty to exercise reasonable care in protecting and securing Plaintiff's and the Class Members' PII;

g.  Whether by publically disclosing Plaintiff's and the Class Members' PII without authorization, Equifax invaded Plaintiff's and the Class Members' privacy;

h.  Whether Equifax's conduct constitutes deceptive trade practices under Delware law;

i.  Whether Plaintiff and the Class Members suffered damages as a result of Equifax's failure to secure and protect their PII; and

j.  Whether Equifax violated federal and state laws by failing to timely notify Plaintiff and the Class Members on an individual basis about the theft and dissemination of their PII.

35.  Plaintiff's claims are typical of the claims of the Class Members in that such claims all arise from Equifax's failure to properly safeguard and protect Plaintiff's and the Class Members' PII and the resulting Breach.

36.  Plaintiff and his counsel will fairly and adequately represent the interests of the Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the Class Members'

interests.  Plaintiff's counsel are highly experienced in the prosecution of consumer class actions and intend to vigorously prosecute this action on behalf of Plaintiff and the Class Members.

37.  A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and the Class Members.  Plaintiff and the Class Members have been irreparably harmed as a result of Equifax's wrongful actions and inactions.  Litigating this case will reduce the possibility of repetitious litigation relating to Equifax's failure to secure and protect Plaintiff's and the Class Members' PII.

38.  Class certification is, therefore, appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.  Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Equifax has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

40.  Class certification is also appropriate because the expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.

## COUNT I
## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

41.  Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

42.  One of the fundamental purposes of the FCRA is to protect consumers' privacy. 15 U.S.C. § 1681(a).  Protecting consumers' privacy involves adopting reasonable procedures to keep sensitive information confidential.  15 U.S.C. § 1681(b).

11

43. The FCRA defines a "consumer reporting agency" as:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

44. The FCRA defines a "consumer report" as:

[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

45. Defendant regularly assembles consumer information contemplated by the FCRA and utilizes interstate commerce to furnish such information on consumers (consumer reports) to third parties.

46. Plaintiff's and the Class Members' PII constitute Consumer Reports under the FCRA because this information bears on, among other things, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living, and is used or collected, in whole or in part, for the purpose of furnishing such information to third parties.

47. The FCRA requires the adoption of reasonable procedures with regard to, among other things, the confidentiality and proper utilization of personal and insurance information. 15 U.S.C. § 1681(b). The FCRA also requires that consumer reporting agencies "maintain

reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e.

48. Equifax failed to adopt and maintain these and other reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

49. Equifax failed to take reasonable and appropriate measures to secure, safeguard and protect the PII.  Equifax also failed to place itself in a position to immediately notify Plaintiff and the Class Members about the Breach.

50. Equifax's violations of the FCRA, as set forth herein, were willful or, at the very least, reckless, thereby constituting willfulness.

51. As a result of Equifax's willful or reckless failure to adopt and maintain reasonable procedures to limit the furnishing of Plaintiff's and the Class Members' PII to the purposes listed under 15 U.S.C. § 1681b, Plaintiff's and the Class Members' PII was disseminated to unauthorized third parties, compromised, and stolen.  Plaintiff and the Class Members suffered individual harm as a result of Defendant's willful or reckless violations of the FCRA.

52. As a further direct or proximate result of Equifax's willful or reckless violations of the FCRA, as described herein, Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described herein.

53. Plaintiff and the Class Members, therefore, are entitled to compensation for their actual damages, statutory damages of not less than $100 and not more than $1,000, each, as well as attorneys' fees, punitive damages, litigation expenses and costs, pursuant to 15 U.S.C. § 1681n(a).

**COUNT II**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT**

54. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

55. Equifax negligently failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b.

56. Plaintiff's and the Class Members' PII was wrongfully disseminated to the public as a direct and foreseeable result of Defendant's failure to adopt and maintain such reasonable procedures.

57. Equifax disclosed Personally Identifiable Information to one or more third parties in violation of the FCRA because such disclosure was not necessary to carry out the purpose for which Equifax received the information, nor was it permitted by statute, regulation or order.

58. As a direct and proximate result of Defendant's negligent violations of the FCRA, as described herein, Plaintiff's and the Class Members' PII was made accessible to unauthorized third parties in the public domain, compromised and stolen. Plaintiff and the Class Members suffered individual harm as a result of Defendant's negligent violations of the FCRA.

59. As a further direct or proximate result of Equifax's negligent violations of the FCRA, as described herein, Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described herein.

60. Plaintiff and the Class Members, therefore, are entitled to compensation for their actual damages, as well as attorneys' fees, punitive damages, litigation expenses and costs, pursuant to 15 U.S.C. § 1681n(a).

## **COUNT III**
## **NEGLIGENCE**

61. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

62. By accepting and storing Plaintiff's and the Class Members' PII in its computer systems and on its networks, Equifax undertook a duty to exercise reasonable care to protect, secure and safeguard the Personally Identifiable Information and to use commercially reasonable methods to do so.

63. Equifax owed a duty of care not to subject Plaintiff and the Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

64. Equifax owed a duty to Plaintiff and the Class Members to protect the PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices.

65. Equifax owed a duty to Plaintiff and the Class Members to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

66. It was reasonably foreseeable that Defendant's failure to exercise reasonable care to protect and secure Plaintiff's and the Class Members' PII would result in an unauthorized third party gaining access to, possession of, and control over such information for an unlawful purpose.

67. Equifax's negligence directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII and Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described herein.

**COUNT IV**
**NEGLIGENCE *PER SE***

68. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

69. Equifax's violation of the FCRA, as set forth herein, constitutes an actionable claim of negligence *per se* under Delaware law.

70. The purpose of the FCRA is, in part, to protect those individuals who have had their PII entrusted to a third party.

71. The FCRA is a statute that applies to Equifax (a consumer reporting agency) and the conduct in which Defendant has engaged.

72. As set forth in greater detail throughout this Complaint, Equifax has violated the FCRA by, among other things:

   a. Failing to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b; and

   b. Failing to take reasonable and appropriate measures to secure, safeguard and protect the PII.

   c. Failing to place itself in a position to immediately notify Plaintiff and the Class Members about the Breach.

73. Equifax's violation of the FCRA is the proximate cause of Plaintiff's and the Class Members' injuries.

74. Equifax's actions and inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII and Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer)

the damages described herein, and such actions and inactions therefore constitute negligence *per se*.

## COUNT V
## INVASION OF PRIVACY

75. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

76. Plaintiff's and the Class Members' PII is private information.

77. Dissemination and publication of Plaintiff's and the Class Members' PII would be offensive to a reasonable person.

78. The public has no legitimate interest in being apprised of Plaintiff's and the Class Members' PII.

79. Defendant's failure to safeguard and protect Plaintiff's and the Class Members' PII directly and proximately resulted in unreasonable publicity to the private lives of Plaintiff and the Class Members.

80. Plaintiff and the Class Members have a legal interest in the privacy of their PII.

81. Defendant's failure to safeguard and protect Plaintiff's and Class Members' PII was a direct and proximate cause of the access to and obtaining of the PII by the public as a matter of law.

82. Defendant's failure to safeguard and protect Plaintiff's and Class Members' PII deprived Plaintiff and the Class Members of their legal interest in the privacy of that information, thereby causing them damages.

83. As a result of Defendant's actions and inactions resulting in Plaintiff's and the Class Members' loss of privacy, Plaintiff and the Class Members were (and continue to be)

17

injured and have suffered (and will continue to suffer) the damages described herein, including, but not limited to, compensatory and punitive damages.

## COUNT VI
## VIOLATION OF DELAWARE'S CONSUMER FRAUD ACT
**(asserted on behalf of the Subclass only)**

84. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein

85. Under the CFA the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."  6 Del. C. § 2513(a).

86. Equifax willfully, recklessly and negligently failed to adopt and maintain reasonable procedures designed to safeguard and protect Plaintiff's and Class Members' PII.

87. Plaintiff's and the Class Members' PII was wrongfully disseminated to the public as a direct and foreseeable result of Defendant's failure to adopt and maintain such reasonable procedures.

88. Plaintiff and the Class Members reasonably believed that a company such as Equifax—one of the three major credit reporting companies—would have sufficient safeguards in place to protect the Plaintiff's and the Class Members' PII, particularly given Equifax's role in providing consumer reports to third parties.  Equifax intentionally misled the public in this regard.

89. As a direct and proximate result of Defendant's violations of the CFA, as described herein, Plaintiff's and the Class Members' PII was made accessible to unauthorized third parties in the public domain, compromised and stolen.  Plaintiff and the Class Members suffered individual harm as a result of Defendant's violations of the CFA.

90. As a further direct or proximate result of Equifax's violations of the CFA, as described herein, Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described herein.

91. Plaintiff and the Class Members, therefore, are entitled to compensation for their actual damages, as well as attorneys' fees, treble damages, litigation expenses and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court enter judgment on their behalf and on behalf of the Classes defined herein, by adjudging and decreeing that:

A. This action may proceed as a class action, with Plaintiff serving as the Class Representative, and with Plaintiff's counsel as Class Counsel;

B. Defendant has violated the Fair Credit Reporting Act and the Delaware Consumer Fraud Act;

C. Defendant take steps to ensure that the PII is adequately protected;

D. Plaintiff and the Class Members are awarded statutory, compensatory, treble and punitive damages, together with attorneys' fee and costs, including expert witness fees;

E. Defendant is to be responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class;

119764509_1

F.     Defendant shall reimburse Plaintiff's and the Class Members' ascertainable losses;

G.     Plaintiff and the Class Members are entitled to pre-judgment and post-judgment interest on the damages awarded them, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendant; and

H.     Plaintiff and the Class Members are entitled to such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

Respectfully submitted,

*/s/ Jesse N. Silverman*
Jesse N. Silverman (DE ID No. 5446)
Joshua D. Wolson (*pro hac vice* forthcoming)
Jerry R. DeSiderato (*pro hac vice forthcoming*)
**DILWORTH PAXSON LLP**
1500 Market St., Suite 3500E
Philadelphia, PA 19102
(215) 575-7000 (telephone)
(215) 575-7200 (facsimile)

One Customs House
704 N. King St., Suite 500
P.O. Box 1031
Wilmington, DE 19899
(302) 571-9800 (telephone)
(302) 571-8875 (facsimile)

*Attorneys for Plaintiff*

Dated:  September 18, 2017

119764509_1